IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LASHONYA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19 C 4526 |
| | ) | |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC., SAMSUNG SDI CO., LTD., | ) | |
| SAMSUNG SDI AMERICA, INC., | ) | |
| and T-MOBILE USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**CORRECTED
MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Lashonya Taylor has sued Samsung Electronics America, Inc. (SEA), Samsung SDI Co., Ltd., and Samsung SDI America, Inc., and T-Mobile USA, Inc., seeking compensation for injuries she suffered allegedly due to defects in a phone manufactured and distributed by the Samsung defendants and sold to her by T-Mobile. Defendants SEA and T-Mobile have moved to compel arbitration and stay proceedings in the case. For the reasons stated below, the Court grants defendants' motion.

**Procedural history**

Taylor was injured in February 2018 when her Galaxy S7 Edge phone exploded while she was at work, causing her to suffer burns. In late May 2019, Taylor filed suit in state court against SEA, Samsung SDI Co., Ltd., and Samsung SDI America, Inc., which are alleged to have made and distributed the phone, and against T-Mobile, from which Taylor purchased the phone and with which she had a wireless service

agreement.  SEA and T-Mobile were served with summons in early June 2019.  They removed the case to federal court on July 3, 2019 based on diversity of citizenship; at that point, the other defendants had not yet been served with summons.

SEA and T-Mobile both filed answers to Taylor's complaint on July 10, 2019.  They asserted as affirmative defenses a contention that Taylor's claims were subject to an agreement to arbitrate and could not be pursued in court.  The defendants did not, however, move to compel arbitration at that time.

On August 11, 2019, the Court set the case for an initial Rule 16 conference on September 5, 2019 (later moved to September 9 at the request of Taylor's counsel).  Samsung SDI America first appeared in the case in late August 2019 and obtained an extension of time to mid-September to respond to Taylor's complaint.

At the initial Rule 16 conference held in chambers on September 9, 2019—three months after SEA and T-Mobile filed answers to Taylor's complaint—Taylor's counsel advised that the remaining defendant, Samsung SDI Ltd., was a South Korean company that had to be served via the Hague Convention, which would take some time.[1]  The defendants, or at least some of them, advised that they intended to file a motion to compel arbitration and indicated they would do so in about 45 days.  The Court pointed out to the defendants that there was Seventh Circuit authority indicating that a motion to compel arbitration is, or is effectively, a motion under Federal Rule of Civil Procedure 12(b)(3) and noted that if so, they may have waived or forfeited the motion by not filing it as their response to the complaint.

---

[1] Samsung SDI Co., Ltd. has since been service, and both it and Samsung SDI America, Inc. have answered Taylor's complaint and do not claim the benefit of any agreement to arbitrate her claims.

At the Rule 16 conference, the Court ordered the parties to serve Rule 26(a)(1) disclosures by October 7, 2019. Defendants did not ask the Court to stay or vacate that deadline. The parties reported on October 16, 2019 that all parties had served Rule 26(a)(1) disclosures.

SDI and T-Mobile did not file their motion to compel arbitration until October 11, 2019. This was 32 days after the Rule 16 conference and more than four months after they had removed the case to federal court.

**Facts relating to arbitration agreement**

Taylor purchased her Galaxy S7 Edge phone from T-Mobile in June 2016. When she purchased the phone, Taylor signed a document in which she agreed to T-Mobile's terms and conditions. *See* Defs.' Mem. in Support of Mot. to Compel Arb., Ex. A (Muzio Decl.) ¶ 11, Ex. A-2. That same one-page document stated that "T-Mobile REQUIRES ARBITRATION OF DISPUTES unless for new customers YOU OPT OUT WITHIN 30 DAYS OF ACTIVATION, or for existing customers YOU PREVIOUSLY OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS." *Id.*, Ex. A-2. Taylor was an existing customer going back to 2006, and it is undisputed she had not opted out of T-Mobile's arbitration requirement.

The terms and conditions in effect at the time Taylor purchased the phone were T-Mobile's March 2016 terms and conditions.[2] *See* Muzio Decl. ¶ 14. A summary paragraph on page 3 of the terms and conditions states that by accepting them, the purchaser is "agreeing to resolve any dispute with us through binding arbitration (unless

---

[2] The document that Taylor signed provided the URL at which a customer could find the terms and conditions. *See* Defs.' Mem., Ex. A-2 (citing www.T-Mobile.terms-conditions).

3

you opt out) or small claims procedures, and to waive your rights to a class action suit and jury trial." Defs.' Mem., Ex. A-3 at 3. This paragraph cross-referenced the complete arbitration provision, which starts on page 14 of the terms and conditions. In relevant part, it reads as follows:

**Dispute Resolution**

***HOW DO I RESOLVE DISPUTES WITH T-MOBILE?**

**Dispute Resolution and Arbitration. YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO PUERTO RICO CUSTOMERS), ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.** This includes any claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers, dealers, authorized retailers, or third party vendors) whenever you also assert claims against us in the same proceeding. You and we each also agree that the Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law, not state law, apply and govern the enforceability of this dispute resolution provision (despite the general choice of law provision set forth below). THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES).

Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF THE DATE YOU PURCHASED A DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE (the "Opt Out Deadline")**. You must opt out by the Opt Out Deadline for each line of Service. You may opt out of these arbitration procedures by calling 1844-849-7497 or online at www.T-Mobiledisputeresolution.com (http://www.tmobiledisputeresolution.com/) **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

For all disputes (except for Puerto Rico customers), whether pursued in court or arbitration, you must first give us an opportunity to resolve your

claim by sending a written description of your claim to the address provided in the "How Do We Send Notices to Each Other" Section below. You and we each agree to negotiate your claim in good faith. If you and we are unable to resolve the claim within 60 days after we receive your claim description, you may pursue your claim in arbitration. You and we each agree that if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue, in small claims court, claims limited strictly to the collection of the past due amounts and any interest or cost of collection permitted by law or this Agreement.

If the arbitration provision applies or you choose arbitration to resolve your disputes, then either you or we may start arbitration proceedings. You must send a letter requesting arbitration and describing your claim to our registered agent (see the "How Do We Send Notices to Each Other" section below) to begin arbitration. The arbitration of all disputes will be administered by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules in effect at the time the arbitration is commenced. The AAA rules are available at www.adr.org or by calling 1-844-849-7497. The arbitration of all disputes will be conducted by a single arbitrator, who shall be selected using the following procedure: (a) the AAA will send the parties a list of five candidates; (b) if the parties cannot agree on an arbitrator from that list, each party shall return its list to the AAA within 10 days, striking up to two candidates, and ranking the remaining candidates in order of preference; (c) AAA shall appoint as arbitrator the candidate with the highest aggregate ranking; and (d) if for any reason the appointment cannot be made according to this procedure, the AAA may exercise its discretion in appointing the arbitrator. Upon filing of the arbitration demand, we will pay or reimburse all filing, administration and arbitrator fees. An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief and attorneys' fees. In addition, for claims under $75,000 as to which you provided notice and negotiated in good faith as required above before initiating arbitration, if the arbitrator finds that you are the prevailing party in the arbitration, you will be entitled to a recovery of reasonable attorneys' fees and costs. Except for claims determined to be frivolous, we agree not to seek an award of attorneys' fees in arbitration even if an award is otherwise available under applicable law. Puerto Rico customers: See below for details on the Puerto Rico Telecommunications Dispute Procedure.

. . .

*Id.* at 14-17.

To highlight two key terms just quoted, the arbitration provision states that both

5

parties agree that "any and all claims or disputes in any way related to or concerning the agreement, our privacy policy, our services, devices or products, including any billing disputes, will be resolved by binding arbitration or in small claims court." It goes on to provide that the agreement to arbitrate disputes also covers "claims against other parties relating to Services or Devices provided or billed to you (such as our suppliers . . . or third party vendors) whenever you assert claims against us in the same proceeding." T-Mobile and SEA's motion to compel arbitration is based on these terms.

Taylor does not dispute that the arbitration provision, by its terms, applies to her claims against T-Mobile and SEA. She argues, however, that the agreement is unenforceable because there is no mutual obligation to arbitrate claims; it is unconscionable and thus unenforceable; and in any event defendants waived or forfeited the right to insist on arbitration.

## Discussion

**1.    Who determines arbitrability**

Two of Taylor's arguments—non-mutuality and unconscionability—address the validity of the arbitration agreement. Defendants argue that the agreement delegates these questions to the arbitrator and that the Court lacks the authority to decide them.

Generally speaking, a court decides "gateway" issues relating to arbitration, including whether there is a valid arbitration agreement and whether it applies to the particular controversy. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). But contracting parties may alter this general rule by agreement, and when this is claimed, "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chi. Inc. v.*

6

*Kaplan*, 514 U.S. 938, 943 (1995). But "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakabl[e]' evidence that they did so." *Id.* at 944 (quoting *AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 649 (1986)).

There is no language in T-Mobile's terms and conditions that suggests that the arbitrator is to decide the issue of arbitrability. Defendants rely on the terms' statement that "[t]he arbitration of all disputes will be administered by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules in effect at the time the arbitration is commenced." Defs.' Mem., Ex. A-3 at 16. Defendants then quote a rule of the AAA that states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity or the arbitration agreement or to the arbitrability of any claim or counterclaim." Defs.' Reply at 8. Although defendants miscite the AAA *Commercial* Arbitration Rules, specifically Rule 7(a), the rules actually applicable, the *Consumer* Arbitration Rules, contain an identical provision, specifically Rule 14(a). *See* adr.org/cites/default/files/Consumer%20Rules.pdf (last visited Mar. 14, 2020).

The Court is cognizant of the fact that the overwhelming majority of courts that have addressed this point have concluded that an arbitration agreement's incorporation by reference of a rule like this is sufficient to delegate to the arbitrator[3] the determination of validity and arbitrability. *See Ali v. Vehi-Ship, LLC*, No. 17 C 2688, 2017 WL

---

[3] "Delegate" is the term now commonly used by the Supreme Court on this question. *See, e.g., Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). The ordinary meaning of "delegate" is to commit a power or function to someone else.

7

5890876, at *3 (N.D. Ill. Nov. 27, 2017) (collecting cases). But the Seventh Circuit has not addressed the point, and this Court does not find these decisions persuasive. It is hard to see how an agreement's bare incorporation by reference of a completely separate set of rules that includes a statement that an arbitrator has authority to decide validity and arbitrability amounts to "clear and unmistakable" evidence that the contracting parties agreed to delegate those issues to the arbitrator and preclude a court from answering them. To the contrary, that seems anything but "clear." And the AAA rule itself does not make the purported delegation of authority any more "clear" or "unmistakable." The AAA rule simply says that the arbitrator has the authority to decide these questions. It does not say that the arbitrator has the sole authority, the exclusive authority, or anything like that. The language of the rule does not suggest a *delegation* of authority; at most it indicates that the arbitrator possesses authority, which is not the same as an agreement by the parties to give him sole authority to decide those issues.

In sum, the Court overrules SEA and T-Mobile's contention that the Court lacks the authority to decide the issues of validity and enforceability of the arbitration agreement.

**2.     Mutuality**

The Court concludes, however, that the arbitration agreement does not fail for lack of mutuality. Taylor argues that there is no mutual agreement to arbitrate because the agreement permits T-Mobile to go to court to recoup money but relegates customers to arbitration. Specifically, Taylor cites the following language found in the third paragraph of the just-quoted dispute resolution term:

> You and we each agree that if you fail to timely pay amounts due, we may assign your account for collection, and the collection agency may pursue,

8

> in small claims court, claims limited strictly to the collection of the past due amounts and any interest or cost of collection permitted by law or this Agreement.

Ex. A-3 at 15.

This does not render the agreement non-mutual. First of all, under Illinois law, mutuality of obligation is not essential to the validity of a contract. *See Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 21, 976 N.E.2d 344, 351. Rather, what's critical is consideration. *Id.* In *Carter*, the Illinois Supreme Court approvingly quoted the Restatement (2d) of Contracts for the proposition that "If the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'" *Id.* (quoting Restatement (2d) of Contracts § 79 (1981)). To put it another way, if each side has given consideration to support the promises made by the other side, that is sufficient, and "mutuality" does not require each side's obligations to be equivalent. *See id.* ¶ 24, 976 N.E.2d at 352. And the frame of reference is the contract as a whole, not individual terms in the contract such as an arbitration provision. Taylor does not contend, nor could she successfully contend, that T-Mobile provided no consideration for her promises under the agreement: it agreed to provide her cellular phone service, among other things. This case is nothing like *Vassilkovska v. Woodfield Nissan, Inc.*, 258 Ill. App. 3d 20, 28, 830 N.E.2d 619, 625 (2005), cited by Taylor, in which unbalanced arbitration requirements rendered an arbitration agreement unenforceable. There the court was dealing with a stand-alone arbitration agreement, not one embedded within a larger agreement in which the opposing party had provided other consideration sufficient to support the consumer's agreement to arbitrate.

That aside, there is nothing non-mutual about the arbitration requirement even if

9

one looks just at that and ignores the rest of the parties' agreement. Specifically, the agreement makes it clear that *both* parties—not just T-Mobile—have the ability to take disputes to small claims court. And Taylor had the option to opt-out of the arbitration requirement entirely.

For these reasons, Taylor's non-mutuality argument lacks merit.

**3.     Unconscionability**

Next is the unconscionability argument. Taylor contends that the arbitration agreement is "substantively unconscionable" because it "is both totally one-sided and harsh." Pl.'s Resp. to Defs.' Mot. to Compel Arb. at 10. Her primary contention in this regard is that the agreement allows T-Mobile to go to court to recoup money while relegating its customers to arbitration. This argument fails for the same reason just noted: the agreement does not permit only T-Mobile to go to court; it allows both sides to go to small claims court, or to arbitration, to litigate disputes.

In addition, the agreement to arbitrate includes a number of provisions that eliminate any contention that arbitration is unduly cost-prohibitive for consumers. Specifically, for claims under $75,000, T-Mobile agrees to pay the arbitration costs, and a prevailing customer is entitled to recover attorney's fees as a matter of course—unlike T-Mobile, which can recover attorney's fees only if it establishes that the customer's claim was frivolous. Finally, as the Court has noted, T-Mobile's terms and conditions specifically allow a consumer to opt out of arbitration altogether at the time she considers the terms and conditions.

Under the circumstances, the Court cannot say that the contract terms are so one-sided as to be oppressive or unfairly surprising, that there is an overall imbalance in

10

the parties' rights and obligations, or that there is a significant cost-price disparity—which is what is required to show unconscionability. *See Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 28, 857 N.E.2d 250, 267 (2006).

### 4. Waiver / forfeiture

Finally, Taylor argues that defendants waived their right to arbitration by their participation in this lawsuit or alternatively that they waived (or forfeited) the right by answering the complaint and failing to file a motion seeking arbitration before answering. The Court deals with these arguments in turn.

The Federal Arbitration Act embodies a policy favoring enforcement of arbitration agreements, but a contractual right to arbitration can be waived. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.,* 969 F.2d 585, 587 (7th Cir. 1992). Waiver may be inferred from a party's actions. *Id.* The question is whether, "considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). The "diligence or lack thereof" of the party seeking arbitration "should weigh heavily in the decision." *Id.* Other factors to be considered are "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* A showing that the other party was prejudiced by reliance on the waiving party's participation in litigation is not required, but if such prejudice exists, it is a relevant factor. *Id.*

Defendants were diligent in claiming a right to arbitrate in the sense that they raised it as a defense in their answers to Taylor's complaint. They were less than diligent, however, in attempting to enforce that right. Specifically, they answered the

11

complaint, sat on their rights for four months after removing the case to federal court, and got the benefit of Taylor's Rule 26(a)(1) disclosures before filing their motion to compel arbitration. Whether or not that amounts to a waiver, it is not a good practice. If nothing else, it tends to undermine the notion that parties opting for arbitration do so partly to get a quicker resolution of their dispute.

The Court concludes, however, that defendants' delay alone does not constitute waiver of their right to seek arbitration of Taylor's claims. There is no indication that SEA and T-Mobile were "waiting to see how they fare[d] in a judicial forum before choosing arbitration," that there was any potential for "duplicative adjudication of disputes," or that there was "the undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve a case." *Kawasaki Heavy Indus.*, 660 F.3d at 994-95. This is not, for example, a case like *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388 (7th Cir. 1995), in which the defendant first removed the case from Wisconsin state court to federal court and then litigated in court for six months before "dropp[ing] a bombshell into the proceedings" by filing a motion to stay the action pending arbitration. *Id.* at 389. Unlike the defendant in *Cabinetree*, there is no basis to believe that SEA and T-Mobile were "weigh[ing] [their] options" as between litigation and arbitration. *Id.* at 391. And as in *Kawasaki Heavy Industries*, their assertion of their right to arbitration "was not out of the blue." *Kawasaki Heavy Indus.*, 660 F.3d at 996.

Taylor separately argues that defendants waived or forfeited their right to arbitration by operation of the Federal Rules of Civil Procedure by answering Taylor's complaint without moving, at or before that time, to compel arbitration. "An agreement

to arbitrate is a type of forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533-34 (1995). "Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3) . . . ." *Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015). Similarly, in *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014), the Seventh Circuit said that a motion to dismiss based on an arbitration agreement should have been brought "as a motion to dismiss under Rule 12(b)(3), for improper venue . . . ." In both *Johnson* and *Grasty*, the court's comments were dealing with the propriety of bringing a motion to dismiss and compel arbitration under Rule 12(b)(1), but the point is the same: a motion in which a party seeks to have the dispute arbitrated rather than litigated in court raises an issue of venue that is appropriately addressed by way of a motion under Rule 12(b)(3).[4]

"An objection to venue 'can be waived or forfeited.'" *Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (quoting *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004)). One way that may happen is by virtue of Federal Rule of Civil Procedure 12(h)(1). *See Auto. Mechs. Local 701*, 502 F.3d at 746. That rule says that a party waives a defense listed Rule 12(b)(2) through (5) by, among other things, failing to either make it by motion "under this rule" or include it in a responsive pleading, i.e. in

---

[4] It cannot be the case that the difference here is that the defendants aren't seeking "dismissal" but rather only a stay. If there is or should be a waiver or forfeiture rule, it would make no sense that it can be avoided simply by the choice of the title for the party's motion.

the answer. Defendants did include their defense regarding arbitration in their answer, so Rule 12(h)(1) does not compel a conclusion that they waived the point. But that does not save defendants under Rule 12: Rule 12(b) says that a motion asserting any of a number of defenses—including the one effectively at issue here, improper venue—"*must* be made before pleading," i.e., before filing an answer to the complaint. Fed. R. Civ. P. 12(b) (emphasis added); see Fed. R. Civ. P. 7(a) (defining "pleadings" to include complaints, answers, and third-party complaints, and distinguishing them from "motions," defined in Rule 7(b)). Defendants did not do this; they answered the complaint and only later—over 90 days later—filed a motion seeking arbitration of the dispute.

The Court is inclined to believe that SEA and T-Mobile waived or forfeited their contractual right to have Taylor's claim against them arbitrated, by operation of Rule 12(b), by answering her complaint without moving to dismiss or compel arbitration. But in the absence of guidance from the Seventh Circuit on this point, the Court does not believe it appropriate to reach that conclusion as a matter of first impression. All, or virtually all, of the Seventh Circuit's cases about waiver fall under the general rubric set out in *Kawasaki Heavy Industries*, specifically, whether a party participated in litigation actively enough to conclude that it was giving up its right to seek arbitration. Because the Rule 12(b) issue does not fall within that more common scenario, the Court believes that the better course is to conclude there is no waiver or forfeiture. If Taylor wants further review of the point, however, the Court will certify the matter for interlocutory appeal under 28 U.S.C. § 1292(b).

### 5.     Stay of proceedings against other defendants

For the foregoing reasons, the Court will stay litigation of Taylor's claims against SEA and T-Mobile.  Those defendants argue, however, that if the Court orders arbitration of Taylor's claims against them, it should also stay the remainder of the case.  But they offer no justification for staying litigation of Taylor's claims against parties who are not entitled to arbitration, and the other defendants have answered Taylor's complaint and have not sought a stay.  The Court declines to stay the litigation generally.

### Conclusion

For the reasons stated above, the Court grants the motion of defendants Samsung Electronics America, Inc. and T-Mobile USA, Inc. to compel arbitration [18] and stays litigation of plaintiff's claims against them.  The Court overrules defendants' motion to stay litigation of plaintiff's claims against the other defendants, Samsung SDI America, Inc. and Samsung SDI Co., Ltd.  The case is set for a telephone status hearing on March 23, 2020 at 8:30 a.m.  Counsel are to use the following call-in number: 888-684-8852, conference code 746-1053.  Counsel should be on the line at the time their status hearing is set to begin but should wait for their case to be called before identifying themselves, because attorneys in other cases may be calling into the same call-in number for statuses in their cases.  In addition, counsel should keep their phones on mute until their case is called.

Date:  March 15, 2020

                                                                     _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge